UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ASHER ASSOCIATES, LLC., a Colorado
Limited Liability Company; and PETRA
ENERGY, INC., a Colorado Corporation,

                            Plaintiffs,

      v.                                    07-cv-1379

BAKER HUGHES OILFIELD OPERATIONS, INC.,
a California corporation, d/b/a CENTRILIFT,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **MEMORANDUM OPINION**

Defendant Baker Hughes Oilfield Operations moves to exclude evidence of: (1) Plaintiff's loss of oil production, revenue, or profit; and (2) Plaintiff's damages for the "cost of money" and certain other expenditures.

    **a.**    **Lost Profits**

Defendant moves to exclude evidence of Plaintiff's loss of oil production, revenue, or profit. The basis of Defendant's motion is that any available oil remains in the ground for extraction and sale at a future date and, therefore, allowing Plaintiff to recover for loss oil production in this action and again when it extracts and sells the oil would give Plaintiff a double recovery. Plaintiff responds that it is entitled to loss of production damages and that lost profits on the production is a fair measure of damages for any delay in production caused by the failure of Defendant's pump.

Plaintiff relies upon the Fifth Circuit case of Continental Oil Co. v. S.S. Electra, 431 F.2d 391 (5th Cir. 1970). That case involved an offshore drilling platform. A vessel collided with the platform causing damage to the platform. Although there was no damage to the oil wells and no loss of oil, the platform was damaged such that production was halted for a period of 130 days. The district court found that, because the oil remained available for extraction and sale, the proper measure of damages was interest on the net oil production during the 130 days. The Court of Appeals reversed, stating that:

> The oil companies do not claim for lost oil or damage to oil as an asset. Their suit is for damages suffered as a consequence of the collision of the ship with the platform. Profit on oil production is simply one means of measuring the damage suffered. The plaintiffs have lost the use of their capital investment in lease, platform and producing wells for 130 days during which that investment was tied up without return. The fact that the same amount of profit can be made at a later time with the same investment of capital by removing from the ground a like quantity of oil at the same site does not alter the fact that the plaintiffs are out of pocket a return on 130 days use of their investment. Presumably the oil companies ultimately will produce from the reservoir all the oil that is economic to produce, but, as the District Court pointed out, it will require 130 days longer to do so. The plaintiffs must stay on the site 130 days longer, with investment in place, than necessary but for the ship's negligence.
>
> This is no theoretical, shadowy concept of loss. It is squarely within the basic damage doctrine for marine collision of restitutio in integrum, as applied in many comparable situations. Thus, for the vessel laid up for repairs:
>
> In order to make full compensation and indemnity for what has been lost by the collision, restitutio in integrum, the owners of the injured vessel are entitled to recover for loss of her use, while laid up for repairs. When there is a market price for such use, that price is the test of the sum to be recovered. When there is no market price, evidence of the profits that she would have earned if not disabled is competent; but from the gross freight must be deducted so much as would in ordinary cases be disbursed on account of her expenses in earning it; in no event can more than the net profits be recovered by way of damages; and the burden is upon the libellant to prove the extent of the damages actually sustained by him.

Continental Oil Co., 431 F.2d at 392. The court specifically noted, however, that "[w]e need not consider whether lost profit or a fair return on investment is a better measure. . . . The only evidence before us is of lost profit." Id. at 393 n.3.

The holding in Continental Oil Co., was further explained in Nerco Oil & Gas, Inc. v. Otto Candies, Inc., 74 F.3d 667, 668 (5th Cir. 1996). That case also involved a collision between a vessel and an offshore oil and gas platform causing the platform to be shut-in for between 31 and 50 days. The question before the Court of Appeals was whether lost profits was the proper measure of damages when an offshore well is shut-in as the result of an allision. The court noted that "[t]he true damages to the platform owners . . . is that they will be required to remain at the site longer than expected to recover the oil. . . ." Nerco, 74 F.3d at 669. Based on the facts presented, the court found that damages were better determined by calculating loss directly attributed to the interruption of production rather than lost profits. Id. at 669-70.

While lost profits may be an appropriate form of damages in the proper case, courts have noted that "awarding a plaintiff net profits as compensation for deferred production is tantamount to a windfall to the plaintiff" and, therefore, other methodologies are preferable. In re TT Boat Corp., 1999 WL 1276837, at *3 (E.D. La. 1999); see also Agip Petroleum Co. v. Gulf Island Fabrication, Inc., 17 F. Supp.2d 660, 662 (S.D. Tex. 1998) (calculating damages as "the difference between the net present value of the expected cash flows from the planned and actual production dates."); Mobil Exploration & Producing v. A-Z/Grant Intern. Co., 1996 WL 194931, at *6 (E.D. La. 1996) ("[T]he 'difference in discounted net worth' calculation . . . is preferred over plaintiffs' proposed 'lost profits' approach."); Short v. Wise, 239 Kan. 171 (1986) ("An oil producer who suffers a delay in production suffers no

loss of his oil reserve because the reserve is still available to the producer. A delay in production of oil may cause damages because of a market loss sustained by the producer.").

This Court agrees that, where alternative means of calculating damages are reasonably available, lost profits is not the preferred method of calculating damages. While the Court is unlikely to allow lost revenues (or lost profits), any such ruling at this time would be premature.

### b. Cost of Money

Defendant also moves to preclude evidence of: (i) loss of revenue from lack of oil production at Well 44-5; (ii) out-of-pocket expenditures allegedly related to Defendant's work at Well 44-5; and (iii) interest payments on a loan purported to have been taken to cover Plaintiff's expenditures. Defendant claims that such evidence must be precluded because it is "nothing more than a disguised claim for prejudgment interest." Defendant asserts that Plaintiff can only obtain prejudgment interest pursuant to Oklahoma's prejudgment interest statute, 23 Okla. Stat. § 6. According to Defendant, prejudgment interest cannot be recovered where the amount of underlying principal damage is in dispute. Plaintiff responds that the damages it seeks to recover are principal and, thus, not interest and that prejudgment interest is available on its fraud claim.

Under Oklahoma law,[1] "the damages must be liquidated [for prejudgment interest] to be recoverable." Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 914 (Okl. 1997); see 23 Okl. St. Ann. § 6 ("Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is

---

[1] The parties agree that Oklahoma law applies to this case.

vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."). In claims for fraud, however, the jury may award prejudgment interest to compensate for the detriment caused by the deprivation of the money. Okland Oil Co. v. Conoco, Inc., 144 F.3d 1308, 1317 (10th Cir. 1998); 23 Okl. Stat. Ann. § 7. Here, because Plaintiff asserts a claim of fraud, prejudgment interest is an available remedy. Id.

With respect to the non-fraud claims, however, § 6 precludes recovery of damages for the loss of use of money where, as here, the subject money is unliquidated. Thus, to the extent Plaintiff seeks to recover damages on the non-fraud claims relating to the loss of the return on money it could have earned had it extracted oil from Well 44-5, such damages would be precluded. This would include any loss of return on revenue Plaintiff may have realized had oil been extracted from Well 44-5 and the return of money paid by Plaintiff to Defendant or other parties associated with the alleged failure of Defendant's pump. With respect to the loan taken out by Plaintiff (including interest payments thereon), there may be facts demonstrating that this was liquidated and, therefore, recoverable.

**CONCLUSION**

In light of the foregoing analysis: (1) lost revenues/profits likely is an inappropriate measure of damages; and (2) the loss of return on lost oil revenues or on monies spent as a result of any defective pump, are not recoverable.[2] Notwithstanding the foregoing analysis, because any definitive ruling on these issues would be premature at this time, the Court RESERVES decision.

IT IS SO ORDERED.

Dated: November 18, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

---

[2] The latter category of damages would be available only upon a successful fraud claim.